1

2

3

4

5

6             IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9   Steven Lee Tucker,                    )    No. CIV 08-0264-PHX-FJM (DKD)
                                          )
10              Petitioner,               )
                                          )
11  vs.                                   )    **REPORT AND RECOMMENDATION**
                                          )
12  Charles L. Ryan, et al.,              )
                                          )
13              Respondents.              )
                                          )
14  _____     )

15          Steven Lee Tucker filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C.

16  § 2254 on February 8, 2008, challenging his convictions following a guilty plea for two

17  counts of attempted molestation of a child and the imposition of two consecutive fifteen-year

18  prison terms.  On April 2, 2008, he filed an Amended Petition in which he contends that his

19  constitutional rights were violated as follows:  (1) he received the ineffective assistance of

20  trial and appellate counsel; and (2) the trial court erred in dismissing his claims without an

21  evidentiary hearing, using improper aggravating factors, not considering mitigating factors,

22  and imposing a sentence exceeding the presumptive term.  Respondents Charles L. Ryan[1] and

23  the Arizona Attorney General alternatively maintain that Tucker's petition is untimely, that

24  his claims are unexhausted, and that certain claims are not cognizable.  The Court

25  recommends that Tucker's petition be denied and dismissed with prejudice.

26

27  _____

28          [1]Charles L. Ryan is substituted as Interim Director of the Arizona Department of
    Corrections, succeeding Dora Schriro.

**BACKGROUND**

Tucker was originally indicted for three counts of child molestation, one count of sexual conduct with a minor, committed while on release with a prior 1985 conviction for child abuse (Doc. 13, Exh A, B). The victims were his six-year-old stepson and five-year-old stepdaughter. On June 26, 1988, he pleaded guilty to two counts of attempted child molestation, both class 3 felonies and dangerous crimes against children in exchange for dismissal of the remaining two counts and an agreement not to charge Tucker with events described in two police reports (*Id.*, Exh D). On August 30, 1988, the trial court sentenced Tucker to mandatory consecutive terms, finding that aggravated terms were supported by the nature of the offenses, his prior record of similar problems, his previous period of probation for an offense against the same children, and the danger he posed to his own family and others (*Id.*, Exh H at 48-52).

On direct review, Tucker argued that his guilty plea was not intelligently entered because the trial court failed to inform him that if he were sentenced to prison, he would be ineligible to receive earned release credits. The court of appeals confirmed Tucker's conviction and sentence in a memorandum decision filed on May 25, 1989 (*Id.*, Exh K). His petition for review to the supreme court was denied on September 26, 1989 (*Id.*, Exh M). Tucker filed his first Notice of Post-Conviction Relief and a Petition on November 23, 2004, more than fifteen years later. In his petition, he alleged the following grounds for relief: (1) trial counsel provided ineffective assistance by (a) inducing Tucker to plead guilty, (b) failing to interview witnesses and failing to hire expert witnesses, (c) failing to investigate and to assert defenses, (d) failing to file pretrial motions challenging the State's assertion that Petitioner's sentence should be enhanced, (e) failing to present mitigation evidence, (f) failing to object to the trial court's reliance on the State's and the probation officer's sentencing recommendations; (2) a conflict of interest arose between Tucker and trial counsel because counsel told Petitioner he needed more money if the case proceeded to trial; (3) appellate counsel provided ineffective assistance of counsel by (a) failing to argue the issues

raised in this petition, (b) failing to raise issues relating to the plea agreement, (c) failing to

assert that the trial court improperly considered the aggravating factors without any proof,

(d) failing to challenge the State's assertion that Tucker benefitted from the plea because he

faced a life sentence, (e) failing to discover that Tucker was not on probation and did not

have a prior felony; (4) newly discovered evidence in the form of a recanting victim's

affidavit signed in October 1999; (5) the trial court relied on improper aggravating factors

at sentencing; (6) the trial court erred by sentencing Tucker to a term of imprisonment in

excess of the presumptive term; and (7) his sentence violates the Eighth Amendment (*Id.*,

Exh O).

The trial court dismissed all but two of Tucker's claims and scheduled an evidentiary

hearing on his claims that (1) the trial court relied on improper aggravating factors at

sentencing, and (2) that there was a conflict of interest with trial counsel. The trial court

ruled as follows:

> This court agrees with the State's position as set forth in its response concerning the Defendant's claim of ineffective assistance of counsel, except as noted below, and newly-discovered evidence.
>
> The Defendant waived any claim that he had a right to a jury determination of the aggravating circumstances at sentencing and *Blakely* has no application to the Defendant's case. Also the Defendant failed to argue at sentencing any 8th Amendment claim regarding his sentence and that claim has been waived as well.
>
> As the State points out, if trial counsel gave erroneous advice about the sentencing range for the crimes charged and/or whether the Defendant faced enhanced sentences for any prior conviction or probation status none of this undermined the Defendant's guilty pleas. Clearly, the Defendant exposed himself to potential imprisonment for, in effect, the rest of his life if he had proceeded to trial, and trial counsel's advice to settle was certainly reasonable under the circumstances.
>
> The Court further concludes, having read the change of plea transcript, that nothing in the record, except again as noted below, justifies a finding that the Defendant's pleas were not voluntary. Pauses in the plea litany and periodic conferences between the Defendant and his counsel are not uncommon. Moreover, Defendants do, from time to time, become emotional when going through guilty plea proceedings, especially in cases like this one. The plain record of Defendant's plea proceeding shows that he understood what he was doing. Finally, the argument that trial counsel was sub-par because of his failure to present mitigation at sentencing and, therefore at a

1    minimum, a resentencing is in order for this reason is not persuasive. To the
     extent that any mitigation is offered now, the Court finds that it would not have
2    changed the sentences.

3          Concerning the Defendant's claim that trial counsel did not adequately
     investigate the case, again the record at the change of plea proceeding appears
4    to show otherwise. Trial counsel represented that he had interviewed all the
     witnesses in the case except for Dr. Harrison. The Court notes that co-counsel
5    was present also during the plea proceeding and presumably heard this
     statement by counsel. The Defendant also contends that his trial counsel failed
6    to hire experts and disregarded the recantations and inconsistent statements of
     the victims. Neither argument entitles the Defendant to relief. This, as the
7    State presents, is mere second-guessing on the part of the Defendant. This
     Court gives little weight to the attorney affidavit furnished by the Defendant
8    regarding trial counsel's performance.

9          The Court also finds that one of the victim's 1999 recantation is not
     newly-discovered evidence. The Court notes that it is significant that this
10   claim, as well as all the others, comes so late now.

11         The Court, however, does find that two of Defendant's claims may
     warrant further proceedings. The Court resolves that there may be a question
12   of fact regarding the Defendant's claim of conflict of interest on the part of
     trial counsel and a question of law regarding whether the Defendant is entitled
13   to a resentencing as a result of the Court citing at sentencing as aggravating
     circumstances in support of the aggravated sentences imposed the
14   recommendations of the prosecutor and the probation department [sic].

15         IT IS, THEREFORE, ORDERED setting an Informal Conference for
     April 18, 2005 at 9:00 a.m. As Defendant's present counsel is in Tucson he
16   may appear by phone.

17   (*Id.*, Exh R).

18        Tucker filed a Motion for Rehearing, and a Supplemental Motion, claiming a *Blakely*

19   violation, and requesting resentencing. The State responded that *Blakely* did not apply

20   because Tucker's case was final following the court of appeals' decision issued in 1989 (*Id.*,

21   Exh S, T, U). Following the evidentiary hearing at which both Tucker and his trial counsel

22   testified, the trial court dismissed Tucker's petition and denied his motion for rehearing:

23         Regarding the defendant's conflict of interest claim, the Court finds that
     the defendant's testimony to not be credible. He contends that his trial counsel
24   in effect coerced his pleas of guilty because the defendant could not pay
     counsel for his services at trial. As the claim is made years after the
25   defendant's pleas and resentencing is it understandable that counsel has no
     independent specific recollection of his communications with the defendant or
26   the proceedings in court. However, counsel did testify to his habit and practice
     and to his awareness of his ethical obligations all of which speak against the
27   defendant's claim. Moreover, though there were periodic breaks in the change

28
                                         - 4 -

1    of plea proceeding before the Court, the plain record of the proceedings shows
     that the defendant made knowing, voluntary, and intelligent pleas.  The
2    defendant has professed his innocence apparently to the parole board but he
     admitted his guilt at the plea proceeding, to the presentence report writer, and
3    then at his sentencing.  The Court concludes that the defendant pled guilty
     because he was guilty and wished to avoid the harsh mandatory sentencing
4    provisions that would have applied had he proceeded to trial rather than as a
     result of any conflict of interest that his trial counsel had.
5
          As conceded by the state, sentencing recommendations by either the
6    prosecutor or the probation department cannot be considered as legal
     aggravating factors to justify prison sentences in excess of the presumptive
7    sentences.  The Court erred in citing the recommendations as reasons for the
     aggravated sentences in this case and trial counsel should have objected at the
8    defendant's sentencing and appellate counsel should have raised the issue on
     appeal.
9
          That said, this Court now resolves that the sentences would be the same
10   absent those factors.  The Court found that the defendant was a danger to
     others; that there was emotional hard to the victims; that the defendant
11   engaged in other unlawful conduct resulting in offenses that were being
     dismissed or not charged; and that the defendant in the past had been placed
12   on probation for the offense of child abuse.  The defendant was convicted of
     multiple offenses involving different days and different victims.  The Court
13   cited the nature of the offenses as aggravating and specifically notes now that
     the defendant was sentenced for attempted offenses and on Count 4 admitted
14   to the completed offense.

15        Lastly, the defendant appears to have raised the claim in a separate
     pleading entitled "Supplemental Motion for Rehearing" that *Blakely* applies
16   to his case and he should be resentenced for that reason with a jury trial on the
     aggravating factors.  As the state correctly points out, *Blakely* does not apply
17   to the defendant's case.  His convictions and sentences were long ago affirmed
     on direct appeal.
18
          IT IS ORDERED dismissing the defendant's petition for post-
19   conviction relief and denying his Supplemental Motion for Rehearing.

20   (*Id*., Exh W).

21        Tucker petitioned for review in the court of appeals, raising the following claims: (1)

22   trial counsel provided ineffective assistance of counsel by (a) failing to file a pretrial motion

23   on Tucker's behalf, (b) failing to conduct a reasonable investigation of mitigating evidence

24   and to present such evidence at sentencing, (c) coercing Tucker into entering the plea, (d)

25   failing to object to improper aggravators at sentencing; (2) appellate counsel provided

26   ineffective assistance of counsel by failing to argue that the aggravating factors used by the

27   trial court at sentencing were improper; (3) the trial court erred by denying the admissibility

28

of two affidavits submitted by Tucker at the evidentiary hearing; (4) the trial court erred at the evidentiary hearing by not allowing the defense to present any mitigation at either the evidentiary hearing or in a subsequent sentencing and summarily determining the sentence would have been the same even though it admitted two aggravators were improperly determined; and (5) the trial court erred at the evidentiary hearing by concluding that Tucker's plea was voluntary, rather than a result of a conflict of interest with trial counsel (*Id.*, Exh Y). On September 13, 2006, the court of appeals summarily denied review (*Id.*, Exh Z at 239).

On October 4, 2006, Tucker petitioned for review in the Arizona Supreme Court, raising the following claims: (1) trial counsel provided ineffective assistance of counsel by (a) failing to file a pretrial motion on his behalf, (b) failing to object to improper aggravators at sentencing, (c) coercing Tucker to enter into a plea agreement, (d) failing to conduct a reasonable investigation of mitigating evidence and to present mitigation on Tucker's behalf at sentencing; (2) appellate counsel provided ineffective assistance of counsel by failing to argue that the aggravating factors relied on by the trial court at sentencing were improper; (3) the trial court erred during the evidentiary hearing by failing "to allow the defense to present any mitigation at either the evidentiary hearing or a subsequent resentencing" and failing to order a new sentencing; and (4) the trial court erred by resentencing Tucker at the evidentiary hearing because "the aggravating factors which the [trial] court used to, in essence, re-sentence defendant in his minute entry of August 9, 2005, are not *Blakely* exempt" (*Id.*, Exh AA). On February 8, 2007, the supreme court summarily denied review (*Id.*, Exh BB). Tucker filed his federal petition on February 5, 2008 and his amended petition on April 1, 2008 (Docs. 1, 9).

## STATUTE OF LIMITATIONS

### I.     Standard of Review

Tucker was required to file his federal petition within one year of the "date on which the judgment became final by the conclusion of direct review or the expiration of the time

1  for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *Jimenez v. Quarterman*, 129 S.Ct.
2  681, 685 (2009). However, "[t]he time during which a properly filed application for State
3  post-conviction or other collateral review with respect to the pertinent judgment or claim is
4  pending shall not be counted toward any period of limitation under this subsection." *See* 28
5  U.S.C. § 2244(d)(2). In this case, Tucker's state court convictions became final on
6  December 26, 1989, 90 days after the supreme court denied review. *See Bowen v. Roe*, 188
7  F.3d 1157, 1158-59 (9th Cir. 1999). Because Tucker's convictions became final prior to the
8  effective date of the AEDPA, the one-year period of limitations began on April 24, 1996, and
9  expired one year later. Therefore, absent any statutory tolling, Tucker was required to file
10 his federal petition on or before April 24, 1997. *Patterson v. Stewart*, 251 F.3d 1243, 1246
11 (9th Cir. 2001). His first Notice of Post-Conviction Relief, filed on November 23, 2004, more
12 than seven years after the limitations period had expired, could not restart any limitations
13 period that had already expired. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir.
14 2003). It could, at best, extend any previous tolled period that may have existed between
15 April 24, 1996 and November 23, 2004. The question before the Court is whether there is
16 any basis for statutory or equitable tolling during this seven-year period.

17     The one-year limitations period is statutorily tolled if a petitioner's delay in filing was
18 attributable to an "impediment to filing an application created by State action in violation of
19 the Constitution or the laws of the United States . . ., if the applicant was prevented from
20 filing by such State action." 28 U.S.C. § 2244(d)(1)(B). The limitations period begins to run
21 again from the date on which the impediment is removed. *Bryant v. Arizona Attorney*
22 *General*, 499 F.3d 1056, 1060 (9th Cir. 2007). In order to benefit from statutory tolling under
23 this section, a petitioner must not only identify the impediment but also establish "a causal
24 connection between the unlawful impediment and his failure to file a timely habeas petition."
25 *Id.*

26     The Supreme Court has recently held that the timeliness provision in the federal
27 habeas statute is subject to equitable tolling in appropriate cases. *See Holland v. Florida*, 130

28
- 7 -

1  S.Ct. 2549 (2010). A petitioner can benefit from equitable tolling if he establishes that he

2  has been pursuing his rights diligently, and that some extraordinary circumstances stood in

3  his way. *Ras5berry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006). A petitioner must also

4  show that the extraordinary circumstances were *the* cause of his untimeliness. *Spitsyn v.*

5  *Moore*, 345 F.3d 796, 799 (9th Cir. 2003). "[T]he threshold necessary to trigger equitable

6  tolling under [under AEDPA] is very high, lest the exceptions swallow the rule." *Miranda*

7  *v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002). Attorney misconduct that is sufficiently

8  egregious can be a basis for applying equitable tolling. *Spitsyn,* 345 F.3d at 801. Finally, a

9  petitioner must also show that the untimely filing was *caused* by the external impediment and

10 not by his own lack of diligence. *Roy v. Lampert*, 465 F.3d 964, 973 (9th Cir. 2006).

11 **II.      Application to Tucker's Time Periods**

12 **A.      Statutory Tolling**

13         In his reply, Tucker contends that he is entitled to both statutory and equitable tolling.

14 He seeks statutory tolling for the entire period from April 25, 1996 to the date he filed his

15 federal petition on February 8, 2008, claiming that (1) the Arizona Department of Corrections

16 (ADC) created an impediment by failing to provide meaningful access to the courts; (2)

17 Tucker had no knowledge of any statute of limitations until February, 2007, and no

18 knowledge of the AEDPA limitations period until he received the Respondents' Answer in

19 2008; and (3) since the effective date of the AEDPA the ADC library has not had and "still

20 does not contain any provision of the AEDPA." *See* Doc. 18 at 11. He also asserts

21 considerable knowledge of  Departmental Order 902, and further asserts that it did not

22 contain any provisions of the AEDPA or any reference to the AEDPA until April 26, 2004,

23 when Rule 3(c) of the Rules Governing 2254 Cases was added. *Id*. at 14. He asserts that this

24 impediment prevented him from being made aware of any limitations period and therefore

25 prevented him from timely filing his petition. Finally, he asserts the impediment was not

26 removed until he filed his petition in 2008.

27

28

1     The Court concludes that Tucker is not entitled to statutory tolling. First, the Court

2     disagrees with Tucker's claim that ADC created an impediment by failing to provide

3     meaningful access to the courts. His own exhibits attached to his Reply include Department

4     Order 902, enumerating with great detail the procedures required to "ensure that all inmates

5     have direct access to the courts in all legal claims" including *inter alia*, the filing of habeas

6     petitions. *See* Doc. 18, Exh 13. He is also incorrect in stating that the ADC has not and still

7     does not contain any provision of the AEDPA. Tucker also included in his reply a copy of

8     Attachment A to Department Order 902 listing the legal texts and resource material located

9     in the reference section of the General Library of each ADC unit. The list includes four

10    publications containing the AEDPA: (1) 28 U.S.C. Section 2254; (2) *Federal Criminal Code*

11    *and Rules*; (3) *Federal Civil Judicial Procedure and Rules*; and (4) *Post-Conviction*

12    *Remedies* (Yackle). *See also Bryant*, 499 F.3d at 1058. In other words, the impediment that

13    Tucker claims prevented him from timely filing his petition did not exist. Therefore, he

14    cannot claim any statutory tolling for the period of time from April 25, 1996 to February 8,

15    2008.

16         **B.     Equitable Tolling**

17         In addition, Tucker asserts that he is entitled to equitable tolling for the entire period

18    of April 25, 1996 to February 8, 2008. In support of this claim, he recites a series of failures

19    by retained post-conviction counsel to act in his case, dating from 1989 when his direct

20    review concluded, through 1996, at which point he "was left with no money, no usable

21    research, no case file, no court records or files." Doc. 18 at 22. During the period from early

22    1997 through 2001, he asserts that "Petitioner and his representatives obtained police reports,

23    transcripts, court documents, prior probation termination, and other documents, evidence and

24    research to rebuild and reestablish his forfeited case file to present to an attorney to file his

25    Rule 32." *Id.* at 23. After contacting experts and attorneys and witnesses and locating one

26    of the victims, Tucker retained an attorney on January 23, 2001, who filed his Rule 32

27    petition on November 23, 2004, almost four years later. *Id*. at 24.

28

1    Tucker alleges that the events that triggered the extraordinary circumstances began

2    prior to the effective date of the AEDPA and continued until the limitations period had

3    passed. These events included the loss of his case file by one attorney in 1992, the fraudulent

4    representation by another attorney from 1992 to 1997, and the "corrective measures" taken

5    by Tucker "which lasted until late 1999." *Id*. at 26. Tucker asserts that the totality of events

6    must be taken together to provide the accurate tolling period:

7            [T]he actions and behaviors of the two [previous] attorneys Petitioner
         retained to pursue the exhaustion of his federal claims in state court, and the
8        resulting corrective measures and endeavors conducted by Petitioner and his
         representatives, prevented him from filing his claims in state court until
9        November 23, 2004, and subsequently resulted in the late filing of his federal
         habeas petition. *Id.* at 25.
10
         Regarding the due diligence requirement, Tucker asserts that he has satisfied that
11
    condition as well:
12
             After being cheated, scammed, manipulated, and taken advantage of by
13       [attorney] over a five year period from May 1992 until February 1997,
         Petitioner and his representatives acted promptly, extensively and exhaustively
14       to employ the necessary corrective actions: bar complaints, civil action,
         application for recompense, calls to the Attorney General, and letters to the
15       Arizona Bar from February 1997 until August 12, 1999. Petitioner and his
         representatives did not sit idle after the extraordinary circumstances arose.
16       They continued to pursue his claims.

17           Petitioner and his representatives were left with no money, no usable
         work product, and no case file, court records, or previously obtained
18       information. They began contacting attorneys, acquiring documents,
         investigating the claims, collecting evidence, contacting experts, and gathering
19       the funds once again to hire another attorney, from February 1997 until
         January 23, 2001. *Id.* at 27.
20
    Finally, Tucker asserts that the attorney he hired in 2001 had to supplement the information
21
    that Tucker provided him with additional information and interviews, and he was therefore
22
    unable to file his Rule 32 petition until almost four years after his attorney was retained.
23
         The Court concludes that Tucker is not entitled to equitable tolling. Although he cites
24
    the inaction by two of his previous attorneys and loss of his file during the period of 1989
25
    through 1996, that time period is not relevant for tolling purposes because the period of
26
    limitations did not begin to run in Tucker's case until April 24, 1996, the effective date of
27

28
                                              - 10 -

1  the AEDPA.  *Patterson*.  Assuming *arguendo* that Tucker would have been entitled to

2  equitable tolling for the entire time he was represented by the two previous attorneys, *see*

3  *Porter v. Ollison*, ___F.3d___, No. 07-55305 (9th Cir. July 29, 2010), according to Tucker's

4  own statements, that representation *ended* prior to the effective date of the AEDPA.

5  Therefore, his previous attorneys' conduct cannot result in any tolling.

6  Beginning with the time period of April 1996, when the one-year period of limitations

7  began to run, Tucker must satisfy several conditions regarding the "corrective actions" he

8  and his "representatives" engaged in, which included "bar complaints, civil action,

9  application for recompense, calls to the Attorney General, and letters to the Arizona Bar"

10  from April 1996 until August 1999.  In order to be entitled to equitable tolling for this period,

11  he is required to establish the following regarding the corrective measures:  (1) that they were

12  in fact extraordinary circumstances sufficient to warrant equitable relief; (2) that they were

13  the *cause* of his inability to timely file his federal petition; and (3) that they constitute the due

14  diligence required in pursuing his post-conviction claims.  The Court concludes that Tucker

15  has not met these conditions.

16  Initially, the Court notes that Tucker knew from his appellate counsel in 1989, *seven*

17  *years before the limitations period even began to run*, that the next step in the state review

18  process was a the filing of a petition for post-conviction relief.  *See* Doc. 18-2, Exh 7a,

19  12/19/88 Letter from Appellate Counsel John Rood.  Although Tucker states that he did not

20  know what was involved in filing such a petition at that time, a review of the Rules of

21  Criminal Procedure and Yackle's *Post-Conviction Remedies* in the ADC library anytime

22  from April 1996 to April 1997 would have informed him of the procedure for filing such a

23  petition, the deadlines, and what needed to be included in the petition.  Judging from the

24  voluminous, detailed, articulate pleadings Tucker has filed in his federal proceeding, the

25  Court has no doubt that he would have been more than capable of understanding the criminal

26  procedural rules and would have been competent to take the required steps to file such a

27  petition.  His *pro se* status did not affect his ability to make the inquiries necessarily to file

28

1 either his post-conviction petition and/or his federal habeas petition. In addition, the pursuit

2 of legal proceedings against his former attorneys would not have prevented him from filing

3 these petitions. Thus, Tucker has failed to establish that these were extraordinary

4 circumstances warranting equitable relief, or that they in any way prevented him from timely

5 filing his federal petition.

6 In addition, while it appears to the Court that Tucker and/or his "representatives" were

7 quite diligent in pursuing any legal remedies he might have had against his previous

8 attorneys, that is not the "due diligence" that would warrant equitable relief from the one-

9 year limitations period. The due diligence relevant in a federal habeas proceeding is limited

10 to what actions Tucker did or did not take specifically related to the pursuit of his state court

11 post-conviction remedies. Attachments to his reply indicate diligent pursuit of the

12 whereabouts of the attorneys, reporting to the proper state bar authorities, and the pursuit of

13 civil remedies. That is not the diligence relevant to any claim of equitable tolling of the

14 habeas limitations period.

15 Assuming *arguendo* that *any* of the time period between 1997 and 2001 could be

16 tolled, Tucker gives no explanation as to why it would take four years to recapture a state

17 court record that covered a span of less than 18 months, and consisted of legal documents

18 that appeared to be limited to an indictment, a guilty plea and sentencing and transcripts of

19 those proceeding, appeal briefs and a memorandum decision. The lost file was what he has

20 argued was necessary in order for him to file his Notice of Post-Conviction Relief. In

21 addition, Rule 32.5(b) allowed for the appointment of counsel, once Tucker showed

22 sufficient evidence of indigency, a fact he could have easily learned (if he wasn't already

23 aware of it ) by reviewing the *Arizona Rules of Criminal Procedure* available pursuant to

24 Depart Order 902. In addition, his correspondence with appellate counsel indicates a

25 knowledge of the legal system and of the legal arguments regarding ineffective assistance

26 of counsel from which the Court concludes that he was more than capable of filing the

27 required notice of post-conviction relief without any legal assistance, or indeed without

28
- 12 -

1  having recaptured his entire case file. In addition, he admits that the prison paralegal was

2  available for such filing assistance, both as to his Rule 32 petition, *and* his federal habeas

3  petition. He also concedes that he did not take advantage of this paralegal assistance. *See*

4  *Bryant*, 499 F.3d at 1061.

5       Again, assuming *arguendo* that *any* of the previous time period could be tolled,

6  Tucker must also explain what extraordinary circumstances existed during the time period

7  between January 2001, when he finally retained an attorney, and November 2004, almost

8  four years later, when the attorney finally filed his Rule 32 petition. Having reviewed the

9  petition for post-conviction relief filed in 2004, the Court does not understand, nor has

10 Tucker sufficiently explained, why *almost four years'* time was necessary in order to *initiate*

11 Rule 32 proceedings. Nor does he explain why he was unable to protectively file his federal

12 petition *pro se at any time* during this three-year period. He concedes that he was aware of

13 the habeas petition form because he had seen it in the prison library as long ago as *1999*.

14 Again, this is a prisoner who is very knowledgeable about the criminal justice system and the

15 pertinent criminal laws and has proved himself very capable of representing himself in such

16 matters. The Court concludes that Tucker has not met the high burden entitling him to

17 equitable tolling *for a sufficient amount of time necessary to avoid the bar of the one-year*

18 *statute of limitations.*

19 **III.   Supplemental Briefing**

20      **A.   Waiver and Estoppel**

21      In his Supplemental Reply Brief Tucker argues that the State of Arizona has

22 "deliberately and intelligently waived its interests in the principle of finality of Petitioner's

23 conviction and waived its right to, and is estopped from, asserting a statute of limitations

24 affirmative defense in regards to Petitioner's federal habeas petition, by the structure and

25 language contained in the State's procedural rules," citing Rule 32 of the *Arizona Rules of*

26 *Criminal Procedure*, and a 1992 Arizona Supreme Court amendment to Rule 32.4. Doc. 21

27 at 4. The 1992 amendment set time limits for filing post-conviction petitions, and further

28

1 made such limitations inapplicable to a defendant like Tucker who was sentenced prior to

2 September 1992, and who is filing his first petition for post-conviction relief. Tucker argues

3 that other states have amended their PCR procedural rules to conform with the AEDPA,

4 citing *Pace v. DiGuglielmo*, 544 U.S. 408 (2005). He argues that once the state trial court

5 ruled Tucker's Rule 32 timely in 2004, "pursuant to its procedural rules and State Supreme

6 Court Mandate, Petitioner was 'insulated from the rules of finality.'" Doc. 21 at 5. He

7 contends that the federal courts respect and defer to the state's procedural rules. He further

8 argues that if, at any time after the enactment of the AEDPA, the State of Arizona had

9 amended its rules, then he "would have been on notice and would have had to file a timely

10 PCR petition or that would have been the end of the matter." *Id*. at 11. Tucker clarifies that

11 he is not attempting to argue in his supplemental pleading that he is entitled to a re-initiation

12 of the tolling period. Indeed, he contends the argument has *nothing to do with tolling*.

13 Instead, he argues that once the state court determined that Tucker's petition was timely, it

14 was properly filed and pending from November 23, 2004 until February 8, 2007.

15       Tucker concedes he has found no case law to support his argument. His citation to

16 *Pace* does not support his position. In *Pace*, the state of Pennsylvania, like Arizona,

17 amended its previous post-conviction remedy procedures to provide for a deadline to filing

18 where there had been previously been no deadline. Like Arizona, Pennsylvania's new

19 procedures were in effect *prior* to the adoption of the AEDPA. Therefore, Tucker's

20 argument that Pennsylvania somehow changed its procedural rules to adapt to the AEDPA

21 is inaccurate. In addition, the Court finds unpersuasive the idea that a state prisoner whose

22 conviction became final in 1989 can effectively sidestep that finality simply by not filing a

23 post-conviction petition for 15 years, and by this happenstance avoid the application of a

24 one-year period of limitations that applies to *all* other Arizona state prisoners. The Court will

25 not apply Tucker's argument in this case.

26

27

28

**B.    Actual Innocence**

Tucker also argues in his supplemental pleading that his claim of actual innocence justifies an exception to the application of the AEDPA limitations period, "otherwise § 2244(d) would violate the Suspension Clause, and render the Great Writ inadequate and ineffective." He cites *Schlup v. Delo*, 513 U.S. 298, 316 (1995), in support of his actual innocence claim. He contends that he asserted this claim throughout the state court proceedings. *See* Doc. 21 at 2. The Court finds such a broad statement disingenuous, in light of his guilty plea to both counts. In addition, as the trial court stated in its order dismissing his petition, although he professed his innocence to the parole board, he admitted his guilt at the change of plea hearing, to the presentence report writer, and at sentencing. In any event, his actual innocence claim fails because the Ninth Circuit recently ruled that no such exception is available. *See Lee v. Lampert*, ___F.3d___, 2010 WL 2652505, at *7 (9th Cir. July 6, 2010).

**IT IS THEREFORE RECOMMENDED** that Stephen Lee Tucker's Amended Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice** (Doc. 12).

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **denied** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See*, 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have seven days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v.*

1 | *Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any

2 | factual determinations of the Magistrate Judge will be considered a waiver of a party's right

3 | to appellate review of the findings of fact in an order or judgment entered pursuant to the

4 | Magistrate Judge's recommendation.  *See* Rule 72, Federal Rules of Civil Procedure.

5 |      DATED this 11th day of August, 2010.

_____
David K. Duncan
United States Magistrate Judge